UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
REGINA PRUITTE,

                                     Plaintiff,

                -against-

VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD
POLICE DEPARTMENT, VILLAGE OF HEMPSTEAD
POLICE CHIEF PAUL JOHNSON, individually and in his
official capacity, VILLAGE OF HEMPSTEAD POLICE
OFFICER JACK GUEVREKIAN, individually and in his
official capacity, and VILLAGE OF HEMPSTEAD POLICE
OFFICER JOHN DOES #1-5, individually and in their official
capacities,

                                 Defendants.
-----------------------------------------------------------------------------X

Docket No.:  22-cv-3671(JMA)(JMW)

**AMENDED COMPLAINT**

**Plaintiff Demands a Trial by Jury**

        Plaintiff, REGINA PRUITTE, complaining of Defendants VILLAGE OF HEMPSTEAD,

VILLAGE OF HEMPSTEAD POLICE DEPARTMENT, VILLAGE OF HEMPSTEAD POLICE

CHIEF PAUL JOHNSON, individually and in his official capacity, VILLAGE OF HEMPSTEAD

POLICE OFFICER JACK GUEVREKIAN, individually and in his official capacity, and

VILLAGE OF HEMPSTEAD POLICE OFFICER JOHN DOES #1-5, individually and in their

official capacities (collectively, "Defendants"), by and through her attorneys, THE RUSSELL

FRIEDMAN LAW GROUP, LLP, respectfully alleges as follows:

### PRELIMINARY STATEMENT

        1.      Defendant Village of Hempstead Police Officer Jack Guevrekian (hereinafter, "PO

Guevrekian") is a police officer who has sworn to serve and protect the community. On or about

2013 through and including July/August 2019, using his status as a police officer, PO Guevrekian

sexually assaulted and raped Plaintiff REGINA PRUITTE (hereinafter, "Pruitte" or "Plaintiff") at

a building located at or near 50 Jackson Street in the Village of Hempstead, New York, in PO

Guevrekian's Radio Motor Patrol ("RMP") in Hempstead, New York, and in PO Guevrekian's, upon information and belief, personal vehicle.

2.     The emotional and psychological damage to Plaintiff from the sexual assault and rape cannot be overstated: it has been profound and lasting. Like many victims of sexual assault, due to a combination of trauma, fear, and shame, Plaintiff was initially reluctant to speak out about the horrendous and traumatic experience she suffered at the hands of Defendants. But Plaintiff came to realize she could not repress what had happened.

3.     Plaintiff now brings this civil suit to recover compensatory, punitive, and emotional distress damages for this unconscionable, pernicious, and insidious sexual assault and rape at the hands of PO Guevrekian, who acted under the umbrella of protection by law enforcement.

4.     Plaintiff alleges that Defendants wantonly, recklessly, knowingly, and purposefully, acting individually and in conspiracy with each other and with other as yet unknown individuals, while acting under color of state law, intentionally and willfully subjected Plaintiff to, *inter alia*, sexual assault, false imprisonment, personal humiliation, and the intentional and negligent infliction of emotional distress.

5.     Said unconstitutional and illegal conduct was known to Defendants and others who are government officials, elected officials, authorized decision makers, supervisors, and policy makers, and was accepted and supported as policy, practice, and custom.

6.     Plaintiff also seeks punitive damages against the individual Defendants for their malicious, intentional, reckless, and callous indifference to Plaintiff's constitutional rights.

## **JURISDICTION AND VENUE**

7.     Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1)-(4).

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau, the actual place of employment of all of the Individual Defendants is Nassau County in the Eastern District of New York, and the Village of Hempstead is within the jurisdiction of the Eastern District of New York.  Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## PARTIES

9.     That at all times hereinafter mentioned, Plaintiff REGINA PRUITTE is a U.S. Citizen and a resident of the County of Nassau, State of New York.

10.     Defendant VILLAGE OF HEMPSTEAD (hereinafter, "Hempstead") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York and is located within the County of Nassau.

11.     Defendant VILLAGE OF HEMPSTEAD POLICE DEPARTMENT (hereinafter, "HPD") is a subdivision and/or agency of Defendant Hempstead.

12.     Upon information and belief, at all relevant times described herein, Defendant Hempstead, by its agents and/or employees, operated, maintained, and controlled the HPD, including all officers thereof.

13.     Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE CHIEF PAUL JOHNSON (hereinafter, "Chief Johnson") is the police chief of the HPD who is being sued in his individual and official capacity and is an employee of Defendants Hempstead and HPD.

14.     Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER JACK GUEVREKIAN (hereinafter, "PO Guevrekian") is a police officer who is being

sued in his individual and official capacity and is an employee of Defendants Hempstead and HPD. Upon information and belief, at all relevant times described herein, PO Guevrekian was acting under color of state law within the scope of his employment as a police officer employed by Defendant Hempstead, and works under the supervision, direction, and/or control of his supervisors in the HPD.

15. Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER JOHN DOES #1-5 (hereinafter, "PO Does") are police officers who are being sued in their individual and official capacities and are employees of Defendants Hempstead and HPD. Upon information and belief, at all relevant times described herein, PO Does were acting under color of state law within the scope of their employment as police officers employed by Defendant Hempstead, and work under the supervision, direction, and/or control of their supervisors in the HPD.

## JURY DEMAND

16. Plaintiff hereby demands a trial by jury in this action.

## FACTUAL BACKGROUND

17. At all times relevant hereto, Plaintiff is a recovering drug addict. For years, in order to support her addiction, Plaintiff did engage in prostitution.

18. At all times relevant hereto, PO Guevrekian knew and was familiar with Plaintiff prior to the sexual assault complained of herein as PO Guevrekian initially had solicited sex from Plaintiff.

19. PO Guevrekian knew that Plaintiff was a vulnerable individual who had trouble with the law in the past and could be easily manipulated, coerced, intimidated, and threatened with arrest through his status as a police officer.

20.     Commencing on or about September 2006 through sometime in 2013, PO Guevrekian would solicit fellatio and/or sex from Plaintiff. PO Guevrekian would always approach Plaintiff while he was on duty and in uniform, except for their first encounter which was while he was in plain clothes and what appeared to be a personal vehicle.

21.     A few weeks after the first encounter, on or about September 2006, PO Guevrekian approached Plaintiff in uniform and directed her to meet him behind 77 Terrace Ave., Hempstead, NY, and Plaintiff gave Defendant Guevrekian fellatio.

22.     Throughout this period, Defendant Guevrekian and Plaintiff would regularly meet and Plaintiff would either perform fellatio for Defendant Guevrekian or have sex with him.

23.     Commencing on or about 2013, Defendant Guevrekian, under threat of arrest, would force Plaintiff to provide fellatio and sex. The sexual assaults occurred between on or about 2013 and August 2019 on several occasions. The sexual assaults often occurred when Plaintiff was under the influence of drugs at the roof top of 50 Jackson Street, Hempstead, NY; or a laundromat located on Jackson Street, Hempstead, NY; or behind an empty building at or near Margaret Court, Hempstead, NY. Plaintiff would be threatened with arrest if she did not comply with PO Guevrekian's demand for sex (vaginal and oral).

24.     PO Guevrekian would often demand Plaintiff perform oral sex. PO Guevrekian would exclaim to Plaintiff that she gave the best "gum job". Plaintiff would be forced to perform oral sex either at the Jackson Street address, PO Guevrekian's RMP, or, on information, PO Guevrekian's own vehicle.

25.     On other occasions, PO Guevrekian forced Plaintiff to have sex (vaginally) with him. On the occasions PO Guevrekian would force Plaintiff to have vaginal sex, he would exclaim to Plaintiff that it was her "get out of jail fuck".

26.     Plaintiff never consented to performing oral sex and/or vaginal sex with PO Guevrekian. Plaintiff, in fear for her safety or that she would be arrested, could not overcome Defendant Guevrekian's control and dominion over her body.

27.     Plaintiff was in pain and paralyzed with fear while PO Guevrekian had his way with her. Plaintiff was shocked and terrified.

28.     Plaintiff attempted to avoid PO Guevrekian but PO Guevrekian would threaten arrest and physical violence if Plaintiff did not comply. None of the sexual assaults were consensual.

29.      The one instance Plaintiff did not comply with PO Guevrekian's forced sexual assaults, PO Guevrekian arrested Plaintiff.

30.     PO Guevrekian was acting with the actual and/or apparent authority of the HPD when he ordered Plaintiff to have sex with him or face the threat of arrest.

31.     Defendant Guevrekian's actions constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

32.     The aforesaid actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

33.     After each horrific encounter, although Plaintiff wanted to go alert someone, she was afraid that PO Guevrekian would be alerted that Plaintiff had reported the rape, causing her to be susceptible to further assaults, further arrests, and/or other forms of retaliation at the hands of PO Guevrekian and/or others at HPD.

34. Due to the traumatic experience, Plaintiff suffers from nighttime terrors and wakes up screaming in the middle of the night, requiring her to seek help from various mental health providers and counselors.

35. Upon information and belief, at all times relevant hereto, due to the traumatic experience, Plaintiff continues to receive rape trauma counseling services and assistance from multiple psychiatrists and/or other mental health providers and counselors.

36. In assaulting, battering, unlawfully detaining, falsely imprisoning, sexually assaulting, and raping Plaintiff, PO Guevrekian acted maliciously, wantonly, recklessly, and/or in grossly negligent disregard of Plaintiff's rights.

37. Defendants Chief Johnson, Hempstead, and HPD knew of prior instances of misconduct on behalf of PO Guevrekian, and other HPD Officers, yet failed to take any action to prevent future instances of misconduct, essentially countenancing their behavior.

38. By failing to act, Defendants Chief Johnson, Hempstead, and HPD proximately caused the injuries to Plaintiff as alleged herein, as it was foreseeable that PO Guevrekian, and/or other HPD Officers, would continue to use their position as police officers to further their horrid and salacious acts.

39. Upon information and belief, Defendants Chief Johnson, Hempstead, and HPD failed to take any action to terminate PO Guevrekian's employment, contributing to the prurient environment within HPD.

**The Salacious Environment of the HPD**

40. On information, PO Guevrekian, while employed as a police officer by HPD, engaged in a continuous and ongoing course of salacious conduct and criminal wrongdoing throughout the Village of Hempstead.

41.     On information, PO Guevrekian, while employed as a police officer by the HPD, sexually assaulted numerous citizens within the Village of Hempstead, including but not limited to, citizens he came in contact with during his official duties as an HPD police officer.

42.     Upon information and belief, others within HPD similarly assaulted other citizens within the Village of Hempstead.

43.     Most of PO Guevrekian's victims of sexual assault have either been arrested personally by him in the past or had prior contact with other HPD Officers.

44.     Most of PO Guevrekian's victims had been arrested for drug and/or prostitution offenses in the past, and were particularly vulnerable due to their socioeconomic status and/or their status as criminal suspects and/or detainees.

45.     PO Guevrekian's ongoing course of salacious and criminal conduct was well known throughout the HPD, and the actual salacious and criminal conduct by PO Guevrekian and others was open and notorious within the HPD.

46.     It was known within the HPD that PO Guevrekian was a police officer who used his official position to sexually abuse and assault women with whom he came in contact with in his official capacity as a police officer.

47.     Upon information and belief, because HPD failed to take any action regarding the known criminal conduct of others at HPD, PO Guevrekian and other HPD Officers continued to engage in similar criminal conduct by using their status as police officers to sexually abuse and assault women with whom they came in contact within their official capacities as police officers.

48.     Chief Johnson, as Police Chief of the HPD, had actual knowledge of the aforementioned malfeasance and criminal conduct of PO Guevrekian and other HPD Officers and/or widespread allegations of such malfeasance.

49.     In point of fact, in or about October 2004, a complaint was filed with the Hempstead Police Department and the Nassau County District Attorney's office regarding Defendant Jack Guevrekian's lewd behavior. The October 2004 complaint detailed Jack Guevrekian's sexual assault on a female victim that had called 911 seeking assistance regarding a domestic violence incident.

50.     Defendant Jack Guevrekian, instead of protecting the female victim, proceeded to make inappropriate comments; asked the female victim to lift her shirt; and then assaulted the victim by rubbing his body against hers. Defendant Guevrekian returned the very next day to the female victim's home, in uniform, and proceeded to hug and kiss the victim and told her that he "would like to take her out sometime".

51.     Upon information, other female residents of the Village of Hempstead had similar encounters with PO Guevrekian.

52.     Moreover, Plaintiff is aware of other victims that, upon information and belief, Defendant Guevrekian similarly sexually assaulted. Defendants Hempstead, HPD, Chief Johnson, and PO Does were well aware of Defendant Guevrekian's conduct.

53.     Apart from the aforementioned victims, Ms. Carol McGuire, Ms. Jennilee Tooher, and Ms. Kristen Wilke were similarly viciously assaulted and raped by Defendant Guevrekian. Ms. McGuire, Ms. Tooher, and Ms. Wilke's assault and rape is the subject of litigation. *See McGuire v. Village of Hempstead*, et al., 2:20-cv-02117 (JMA)(JMW); *Tooher v. Village of Hempstead, et al.*, 2:21-cv-04268 (AMD)(JMW); *Wilke v. Village of Hempstead, et al.*, 2:22-cv-00920 (JMA)(ST).

54.     That, despite his knowledge of PO Guevrekian's malfeasance and criminal conduct and/or widespread allegations of same, Chief Johnson failed and refused to adequately investigate

PO Guevrekian's actions, acquiesced in PO Guevrekian's conduct, failed to take any remedial action against PO Guevrekian, allowed PO Guevrekian to remain employed as an officer with the HPD, was grossly negligent in his supervision of PO Guevrekian, and was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian.

55.     That the aforesaid actions or inactions by Chief Johnson constituted a deliberate indifference to the constitutional rights of the citizens HPD swore a duty to protect and serve and other citizens with whom PO Guevrekian came into contact in his official capacity as an officer with the HPD.

56.     That the aforesaid actions or inactions by Chief Johnson countenanced the actions of PO Guevrekian and other HPD Officers who engaged in similar conduct described herein, creating an environment where salacious and criminal conduct within the HPD was not only tolerated but encouraged, constituting a deliberate indifference to the constitutional rights of the citizens HPD swore a duty to protect and serve.

57.     Upon information and belief, upon hearing of the allegations set forth herein, Defendants Chief Johnson, Hempstead, and HPD failed to take any measures to remediate the salacious environment within the HPD, which led to the constitutional rights of vulnerable citizens being violated for their prurient desires.

58.     As a result of the aforementioned criminal conduct of Defendants, Plaintiff was subjected to bodily harm, extreme emotional distress and mental anguish, night terrors and nightmares, public humiliation, ridicule and scorn, severe injury to her reputation, loss of dignity, loss of her liberty, placed in grave fear of her safety and life, and lost time from her everyday pursuits.

59.     The events leading up to Plaintiff's assault and rape, including the sexual assault of the aforementioned victims, make clear the policy of Defendants Hempstead, Chief Johnson, and HPD (collectively, "Municipal Defendants"), that their employee was engaged in predatory conduct resulting in the sexual assault and rape of Plaintiff and other victims.

60.     Municipal Defendants' repeated failure to meaningfully respond to reports of criminality by Defendant PO Guevrekian enhanced the risk that the criminal behavior will continue unabated and with knowledge by Defendant PO Guevrekian that no repercussions will be forthcoming.

61.     Municipal Defendants' failure to follow-up and/or make any meaningful attempt to investigate or forestall further incidents demonstrates deliberate indifference to Plaintiff Regina Pruitte's constitutional rights.

62.     The supervising officers of the HPD condone a custom, policy, and/or practice of willful disregard to the obvious risks posed to female residents of the Village of Hempstead.

63.     The patrol officers and supervising officers of HPD did not have the training and knowledge to recognize and respond properly to the imminent danger posed by Defendant PO Guevrekian.

64.     Municipal Defendants' inaction and failure to take corrective actions in response to the system wide failures regarding reporting, investigating, and disciplining Defendant PO Guevrekian has sanctioned and tacitly authorized Defendant PO Guevrekian's criminal actions.

65.     There is a history of Municipal Defendants and their employees of mishandling crimes of violence against female residents of the Village of Hempstead and these failures have frequently caused the deprivation of those individuals' constitutional rights. In 2014, Defendants were sued by N'Daya Lee. Ms. Lee's mother, Diane Parker-Reed, had been killed by her husband

during a domestic violence incident. This was after a well-documented history of complaints and complete inaction by Defendants to protect Ms. Parker-Reed. Defendants have a long history of utter and complete failure in protecting and/or taking action against perpetrators of violence against women within their jurisdiction. *N'Daya Lee v. Inc. Village of Hempstead, et al*., 14-CV-2853 (ADS)(GRB).

66.    Defendants' systemic failures to investigate, discipline, and rout out criminal behavior within HPD is evident. These systemic failures have led to a custom, policy, and practice of Hempstead to tolerate, condone, and encourage criminal activity and constitutional violations, such as those alleged by Plaintiff herein, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of police misconduct.

67.    To date, Municipal Defendants have made no efforts to investigate and/or criminally charge Defendant Guevrekian. In point of fact, on information, there has been no Internal Affairs Unit investigation into Defendant Guevrekian's unlawful conduct.

## COUNT I
## VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS FOR UNLAWFUL IMPRISONMENT (§ 1983) (AGAINST PO GUEVREKIAN)

68.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

69.    That, on or about 2013 through August 2019, Plaintiff was intentionally and unlawfully detained by PO Guevrekian before, during, and after the sexual assaults and rapes.

70.    The unlawful detention of Plaintiff by PO Guevrekian was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of his employment by the HPD.

71. Plaintiff was aware of her detention.

72. Plaintiff did not consent to being detained.

73. PO Guevrekian did not have any probable or reasonable cause to detain Plaintiff.

74. Plaintiff's detention was not privileged as PO Guevrekian lacked probable or reasonable cause for all of her detention. In fact, no reasonable officer would agree that there was probable cause for Plaintiff's detention prior to, during, and/or after the sexual assaults and rapes.

75. As a result of her illegal detention, Plaintiff's Fourth and Fourteenth Amendment rights were violated and Plaintiff was unlawfully deprived of her liberty without legal justification.

76. As a proximate result of PO Guevrekian's intentional and malicious actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

**COUNT II**
**VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT**
**RIGHTS FOR UNLAWFUL FORCE (§ 1983)**
**(AGAINST PO GUEVREKIAN)**

77. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

78.     The unlawful detention and subsequent sexual assault of Plaintiff by PO Guevrekian was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of his employment by the HPD.

79.     PO Guevrekian, with willful and malicious intent, using the actual and/or apparent authority of the HPD, violently sexually assaulted and raped Plaintiff while he unlawfully detained her under color of state law.

80.     The aforesaid actions of PO Guevrekian constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

81.     PO Guevrekian's actions were intentionally, wantonly, indifferently, recklessly, grossly negligent, and/or negligently done to intimidate and did cause Plaintiff physical and emotional distress.

82.     The sexual assaults and rapes that followed Plaintiff's unlawful detention was an abuse of power, constituted a seizure within the meaning of the Fourth Amendment, constituted a violation of bodily integrity for no legitimate purpose within the meaning of the Fourteenth Amendment, constituted a violation of her right to be free from unlawful force while detained pursuant to the Fourth Amendment, and deprived Plaintiff of her liberty and right to be free from this type of unwanted physical contact.

83.     The seizure, deprivation of Plaintiff's liberty, and violation of Plaintiff's bodily integrity were unreasonable and without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

84.     As a proximate result of PO Guevrekian's intentional and malicious actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and

nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

### COUNT III
### VIOLATION OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983) (AGAINST PO GUEVREKIAN)

85.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

86.     The harm to Plaintiff was foreseeable and a direct result of PO Guevrekian's conduct in unlawfully detaining and subsequently sexually assaulting and raping Plaintiff without any legitimate basis or any other lawful justification.

87.     PO Guevrekian acted in conscious disregard of a great risk of serious harm to Plaintiff by unlawfully detaining Plaintiff and subsequently sexually assaulting and raping her, placing Plaintiff in substantial fear for her health and safety, and causing physical and emotional injuries to Plaintiff.

88.     By coercing Plaintiff into his vehicle by using the actual and/or apparent authority of the HPD, under color of state law, and subsequently sexually assaulting and raping Plaintiff, PO Guevrekian entered into a relationship with Plaintiff in which he created a dangerous situation that only PO Guevrekian could control.

89. PO Guevrekian's conduct was intentional, with wanton indifference, with deliberate indifference, recklessness, and/or gross negligence.

90. PO Guevrekian consciously disregarded a great risk that serious harm would result by unlawfully detaining Plaintiff under color of state law and the actual and/or apparent authority of the HPD, and placing Plaintiff in a dangerous situation that she otherwise would not have been subjected to but for Defendant's conduct.

91. PO Guevrekian was aware and/or it was reasonably foreseeable that his conduct would cause injuries to Plaintiff.

92. PO Guevrekian used his authority to create an opportunity that otherwise would not have existed for harm to occur.

93. PO Guevrekian's conduct in unlawfully detaining and subsequently sexually assaulting and raping Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

94. PO Guevrekian acted intentionally, with wanton or deliberate indifference, recklessness, and/or gross negligence to Plaintiff's rights.

95. The aforesaid actions of PO Guevrekian constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason, in violation of Plaintiff's substantive due process rights guaranteed by the Fifth and Fourteenth Amendments.

96. As a result of PO Guevrekian's willing, wanton, reckless, deliberately indifferent, and grossly negligent conduct, Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated, and she was unlawfully subjected to a dangerous situation directly caused by Defendant's affirmative actions.

97.     As a proximate result of PO Guevrekian's intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

**COUNT IV**
**VIOLATION OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH**
**AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)**
**(AGAINST DEFENDANTS CHIEF JOHNSON, HEMPSTEAD, HPD,**
**AND PO DOES #1-5)**

98.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

99.     Defendants knew that there was a strong likelihood of harm to Plaintiff but failed to take reasonable measures to intervene and prevent the unlawful conduct of PO Guevrekian, despite having an opportunity to do so.

100.     Upon information and belief, Defendants were on notice of PO Guevrekian's propensity to use his status as a police officer to further his own sick and salacious purposes.

101.     Chief Johnson, Hempstead, and HPD knew that PO Guevrekian had engaged in this conduct in the past while using the actual and/or apparent authority of the HPD to carry out his prurient desires.

102.     Upon information and belief, Defendants were on notice of other HPD Officers' propensity to use their status as police officers to further their own sick and salacious purposes.

103.     Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter PO Guevrekian and/or other HPD Officers from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

104.     Had Defendants, including Chief Johnson, intervened to stop the unlawful conduct of PO Guevrekian, Plaintiff would not have been subjected to the events described herein.

105.     As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated.

106.     As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions,  Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## COUNT V
## MONELL
## (AGAINST DEFENDANTS HEMPSTEAD AND HPD)

**Failure to Supervise and Failure to Train**

106.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

107.     The sexual abuse of individuals with prior history of arrests by police officers, including PO Guevrekian, is and was foreseeable.

108.     Defendants Chief Johnson, Hempstead, and HPD were responsible for supervising, overseeing, and controlling their subordinates in the HPD, including PO Guevrekian.

109.     Defendants Chief Johnson, Hempstead, and HPD had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to keep her from being sexually assaulted by their employees, including PO Guevrekian, which was foreseeable based upon his past instances of misconduct, which were known to Chief Johnson and other supervisors in the HPD.

110.     In fact, it was well known throughout the community that multiple HPD Officers, including PO Guevrekian, were using their actual and/or apparent authority to sexually assault vulnerable women who had prior contacts with the HPD.

111.     Despite having this knowledge, Defendants Chief Johnson, Hempstead, and HPD failed to take any remedial measures to prevent foreseeable acts of sexual abuse by HPD Officers.

112.     The countenancing of this behavior created an environment within the HPD wherein HPD Officers were allowed to continue with their salacious behavior, which led to the

constitutional rights of vulnerable citizens, including Plaintiff, being violated for their prurient desires.

113.    Defendants Chief Johnson, Hempstead, and HPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor PO Guevrekian, who had a history of engaging in official misconduct, and failed to implement measures to prevent PO Guevrekian and other HPD Officers from conspiring with each other to cover up their official misconduct.

114.    Defendants Chief Johnson, Hempstead, and HPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor PO Guevrekian and other HPD Officers from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the constitutional rights of individual citizens, including Plaintiff.

115.    Defendants Chief Johnson, Hempstead, and HPD negligently hired, retained, and/or supervised PO Guevrekian when they knew or should have known that he posed a threat of sexual abuse to individuals with prior histories of arrests and/or contact with the HPD.

116.    Defendants Chief Johnson, Hempstead, and HPD knew or should have known of PO Guevrekian's propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries, given the knowledge of other instances of sexual abuse that predate August 2019.

117.    Defendants Chief Johnson, Hempstead, and HPD owed a duty of care to all persons, including Plaintiff, who were likely to come into the influence of PO Guevrekian in his role as a police officer, to ensure that PO Guevrekian did not abuse his authority as a police officer to injure citizens by falsely detaining, sexual assaulting, battering, and/or otherwise subjecting them to abuse for no lawful reason.

118. At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

119. Upon information and belief, Defendants Chief Johnson, Hempstead, and HPD were aware that there was a substantial likelihood that permitting PO Guevrekian to carry on his regular duties as a police officer would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

120. In fact, upon hearing of the allegations, Defendants Chief Johnson, Hempstead, and HPD still failed to take any action and failed to terminate PO Guevrekian's employment or title as a police officer, essentially countenancing this behavior throughout HPD.

121. Chief Johnson and other HPD Supervisors' failure and refusal to adequately investigate PO Guevrekian's actions, acquiescence in PO Guevrekian's conduct, failure to take any remedial action against PO Guevrekian, allowing PO Guevrekian to remain employed as an officer with the HPD, gross negligence in the supervision of PO Guevrekian, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian, subjects Chief Johnson to supervisory liability for the sexual assaults and rapes of Plaintiff.

122. As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's

damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus attorney's fees.

**Custom, Policy, and Practice**

123.    Upon information and belief, it was the custom, policy, and practice of Hempstead to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of police misconduct.

124.    Employees of the HPD, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

125.    Employees of the HPD, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

126.    By failing to supervise, train, and reprimand such HPD Officers, Hempstead caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

127.    By maintaining a de facto policy of automatic indemnification, Hempstead caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

128.    Upon information and belief, it was the custom, policy, and practice of Hempstead to blatantly ignore complaints and/or widespread allegations of sexual assault and/or other malfeasance in order to shield the HPD from receiving any bad press that would be generated from an investigation of police misconduct.

129.     Upon information and belief, this custom, policy, and practice of Hempstead to ignore complaints and/or widespread allegations of sexual assault and other malfeasance created an environment where foreseeable constitutional violations by HPD Officers were rampant, including the violations of Plaintiff's constitutional rights by PO Guevrekian.

130.     Hempstead's failure to take action against HPD Officers involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

131.     As authorized representatives of Defendant Hempstead, the officers' conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, threats of violence and acts of sexual assault, such as Plaintiff's, constituted a custom, policy, and practice which renders Defendant Hempstead liable to Plaintiff as a "Person" acting under the color of state law.

132.     These customs, policies, and practices, which were enforced by Defendant Chief Johnson, were the moving force, proximate cause, and/or affirmative link behind the conduct causing Plaintiff's injuries.

133.     Had Chief Johnson investigated serious complaints of sexual assault and/or widespread allegations of same, PO Guevrekian would not have been in a position to violate Plaintiff's constitutional rights.

134.     Hempstead is therefore liable for violations of Plaintiff's constitutional rights as caused by PO Guevrekian, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

135.     That, by virtue of Chief Johnson and other HPD Supervisors' failure and refusal to adequately investigate PO Guevrekian's actions, acquiescence in PO Guevrekian's conduct,

failure to take any remedial action against PO Guevrekian, allowing PO Guevrekian to remain employed as an officer with the HPD, gross negligence in their supervision of PO Guevrekian, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian, Hempstead, which employed these police officers and policymakers during the relevant time period, exhibited a de facto custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

136.    As a proximate result of Defendants' customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00) plus attorney's fees.

**COUNT VI**
**ADULT SUVIRVORS ACT (PENDENT)**
**(Negligence Against Village Defendants)**

137.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

138.    This Count is brought pursuant to the Adult Survivors Act under Civil Practice Law and Rules ("CPLR") § 214-j as it alleges physical, psychological, and emotional injuries and

damages suffered as a result of conduct, which constitutes a sexual offense as defined in Article 130 of the New York Penal Law ("Penal Law"), committed against Plaintiff an adult person who was 18 years of age or older.

139.    The conduct and acts described herein constitute one or more sexual offenses as defined in Article 130 of the Penal Law, including without limitation, rape, sexual misconduct, criminal sexual act, forcible touching, sexual abuse, aggravated sexual abuse, and facilitating a sex offense with a controlled substance, all under Penal Law §§ 130.00 – 130.90, respectively.

140.    Pursuant to CPLR § 214-j and its supporting legislative filings, the filing of a notice of intention to file a claim is not required for this claim and a claim brought pursuant to CPLR § 214-j is not barred by any statute of limitation or notice of claim or intent to file a claim requirement.

141.    At all times relevant to this claim, Defendants' conduct was negligent in its disregard for the rights and safety of Plaintiff.

142.    In light of the widespread and pervasive environment of staff sexual assault and/or abuse, as described above, that put Defendants on notice of the likelihood of future sexual assault by Guevrekian, of citizens and Village residents, including Plaintiff, Defendants failed to use reasonable care to protect its female citizens and Village residents, including Plaintiff, from the foreseeable risk of harm, to wit sexual assault and/or abuse by Guevrekian.

143.    At all times relevant herein, for reasons discussed above, it was reasonably foreseeable to Defendants that Guevrekian would sexually assault and/or abuse and continue to sexually assault and/or abuse female citizens and Village residents, including Plaintiff.

144.    At all times relevant herein, Defendants knew and should have known, or was unreasonable and negligent in not knowing, that, as described above, its Police Department

suffered from a widespread and pervasive environment of staff-on-arrestee and/or staff-on-Village residents sexual assault and/or abuse.

145.    At all times relevant herein, Defendants foresaw and should have foreseen the significant risk of danger and harm to female citizens, Village residents and/or arrestees, including Plaintiff, in continuing to allow Guevrekian, to patrol and engage with the Villages' female citizens and residents, unsupervised, unmonitored, and/or unsurveilled.

146.    Prior to the sexual assault of Plaintiff, Defendants knew, reasonably should have known, or was otherwise careless in not knowing that Guevrekian, posed a significant and foreseeable threat of sexual assault and/or abuse to Village residents, citizens and/or arrestees, specifically including Plaintiff.

147.    Prior to the sexual assault and abuse of Plaintiff, Defendants knew or should have known that Guevrekian was unfit to serve as a police officer.

148.    In light of the widespread, pervasive environment of sexual assault and/or abuse in Defendant Village's Police Department, Defendants failed to adequately and reasonably conduct a thorough background check to determine if Guevrekian had criminal convictions, arrests, civil allegations, or personal history evincing a propensity to commit sexual assault, sexual abuse or sexual harassment, or that would otherwise render Guevrekian unfit as a police officer.

149.    As a result of Defendant's acts and omissions described herein, including, but not limited to, allowing Guevrekian, to be employed as a police officer, without adequate and reasonable supervision, monitoring, and surveillance, Defendants breached their duty to use reasonable care to protect Plaintiff from reasonably foreseeable harm.

150.     As a result of Defendants' acts and omissions described herein, including, but not limited to, the unreasonable hiring, training, retention, supervision, investigation, and monitoring of Guevrekian, Defendants breached their duty to use reasonable care to protect Plaintiff from reasonably foreseeable harm.

151.     In light of the widespread and pervasive environment of staff sexual abuse of female citizens and Village residents, as described above, that put Defendants on notice of the likelihood of future sexual assault and/or abuse by Guevrekian, Defendants breached their duty of reasonable care to Plaintiff, by, among other things, failing to adequately and reasonably protect Plaintiff from sexual assault and/or abuse at the hands of Guevrekian.

152.     At all times relevant herein, Defendants failed to investigate, inquire, and check that Plaintiff and others like Plaintiff, were free from sexual assault and/or abuse by Guevrekian.

153.     At all times relevant herein, Defendants failed to create, write, and disseminate an adequate specific written procedure or policy for supervising and monitoring police officers, including Guevrekian.

154.     At all times relevant herein, HPD's policy and procedures rules did not adequately define and prohibit sexual misconduct involving HPD employees, nor did Defendants implement and maintain a Sexual Victimization Prevention and Response policy or procedure and failed to train its staff about how to interrupt behavior that leads to sexual victimization.

155.     At all times relevant herein, the HPD employee manual lacked a clear and specific provision regarding staff sexual contact with arrestees and/or the public that failed to set forth penalties for violations.

156.    As evidenced by the ongoing sexual abuse of female arrestees, Village residents and citizens by male police officers, at all times relevant to this action, Defendants failed to develop and implement programs, guidelines, policies, procedures, training, and supervision to prevent, deter, and detect the sexual assault and/or abuse of Village residents, including Plaintiff, in its custody and care.

157.    At all times relevant herein, Defendants failed to maintain its police department in such a way so as to eliminate the possibility that police officers, including Guevrekian, could commit sexual assault and/or abuse undetected, unsupervised, unmonitored, and/or unsurveilled.

158.    At all times relevant herein, Defendants failed to thoroughly investigate all instances of alleged sexual assault and/or abuse within HPD.

159.    At all times relevant herein, Defendants failed to report all knowledge, suspicion, and information regarding every incident of sexual assault, abuse or sexual harassment of arrestees, female citizens and/or female Village residents, including Plaintiff, by police officers, including Guevrekian, and any unauthorized relationship between arrestees, including Plaintiff, and police officers, including Guevrekian.

160.    At all times relevant herein, Defendants failed to report all alleged instances of sexual assault and/or abuse to the Nassau County District Attorney's Office.

161.    At all times relevant herein, Defendants failed to prevent sexual assault and/or abuse, including the sexual conduct listed in Article 130 of the Penal Law, by its police officers, including Guevrekian.

162.    Guevrekian would not have been in a position to sexually assault and/or abuse Plaintiff had Defendants not engaged in the acts and omissions described above and herein.

163. Defendants' acts and omissions described above were the proximate cause of, and a substantial contributing factor to, Plaintiff's injuries and damages described herein.

164. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

165. Defendants' acts, conduct, and omissions show a reckless or willful disregard for the safety and well-being of Plaintiff.

**COUNT VII**
**ADULT SUVIRVORS ACT (PENDENT)**
**(Negligent/Gross Negligent Hiring, Retention, Training and Supervision**
**Against Village Defendants)**

166. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

167. Defendants knew, or were negligent in not knowing, that PO Guevrekian posed a threat of sexual abuse to individuals with a prior history of arrests.

168. Defendants Chief Johnson, HEMPSTEAD, and HPD, by and through each entity's respective agents, servants, and/or employees, had actual knowledge, knew, or reasonably should have known, of PO Guevrekian's dangerous and exploitative propensities and/or that PO Guevrekian was an unfit agent due to his sexual propensities and prior instances of official misconduct.

169. Defendants Chief Johnson, HEMPSTEAD, and HPD, by and through each entity's respective agents, servants, and/or employees, failed to implement the proper programs and/or internal guidelines and regulations to adequately screen violent and/or abuse prone officers before

they are allowed to continue to perform their full duties as police officers, after receiving knowledge of prior instances of misconduct.

170.    The acts of PO Guevrekian described hereinabove were undertaken, and/or enabled by, and/or during the course, and/or within the scope of his employment, appointment, and/or agency with Defendants HEMPSTEAD and HPD.

171.    Defendants Chief Johnson, HEMPSTEAD, and HPD owed Plaintiff a duty to protect her from PO Guevrekian's sexual deviancy and/or to implement the proper programs and/or internal guidelines and regulations to adequately screen police officers who are prone to violence and/or other forms of abuse before allowing them to continue to perform their full duties as police officers.

172.    The countenancing of this behavior created an environment within the HPD wherein HPD Officers were allowed to continue with their salacious behavior, without ever facing an investigation into same or fearing any repercussions for their malfeasance, which leads to the constitutional rights of vulnerable citizens being violated for their prurient desires.

173.    Defendants Chief Johnson, HEMPSTEAD, and HPD's willful, wanton, grossly negligent, and/or negligent acts of commission and/or omission, resulted directly and/or proximately caused the damages set forth herein at length.

174.    In fact, upon hearing of the allegations, Defendants Chief Johnson, HEMPSTEAD, and HPD still failed to take any action and failed to terminate PO Guevrekian's employment or title as a police officer, essentially countenancing this behavior throughout HPD.

175.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of

enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00).

176. Per CPLR § 1603, the foregoing cause of action is exempt from the operation of CPLR § 1601 by reason of one or more of the exemptions provided under CPLR § 1602, including but not limited to CPLR §§ 1602(2) and 1602(7).

**COUNT VIII**
**ADULT SUVIRVORS ACT (PENDENT)**
(***Respondeant Superior* Against Village Defendants**)

177. Plaintiffs repeat and reallege each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

178. By virtue of Guevrekian's employment with Defendants and his actions within the scope of his employment, Defendants are liable for Guevrekian's actions under a theory of *respondeant superior.*

179. As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's

damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00)..

### COUNT IX
### ADULT SUVIRVORS ACT (PENDENT)
### (Assault Against Defendant PO Guevrekian)

180.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

181.    PO Guevrekian's physical molestation, abuse, and rape of Plaintiff was entirely unjustified and constitutes an intentional assault upon Plaintiff.

182.    PO Guevrekian, by his conduct, placed Plaintiff in fear of imminent harm and offensive conduct.

183.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00).

### COUNT X
### ADULT SUVIRVORS ACT (PENDENT)
### (Battery Against Defendant PO Guevrekian)

184.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

185.    Battery is the intentional wrongful physical contact with another person without consent.

186.    PO Guevrekian's intentional physical molestation, abuse, and rape of Plaintiff was entirely unjustified, done without Plaintiff's consent, and constituted a battery upon Plaintiff.

187.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00).

## COUNT XI
## ADULT SUVIRVORS ACT (PENDENT)
### (False Arrest/Imprisonment Against Defendant PO Guevrekian)

188.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

189.    Defendant Guevrekian caused Plaintiff to be falsely arrested/imprisoned.190.    Defendant Guevrekian caused Plaintiff to be confined and intended to have Plaintiff confined.

190.    Plaintiff was conscious of the confinement, Plaintiff did not consent to the confinement, and the confinement was not otherwise privileged.

191.    That by reason of the false arrest, Plaintiff suffered damages as set forth herein.

192.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, and raped, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief:

A.    Under the First Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

B.    Under the Second Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

C.    Under the Third Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

D.    Under the Fourth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

E.     Under the Fifth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus attorney's fees;

F.     Under the Sixth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

G.     Under the Seventh Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

H.     Under the Eighth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

I.     Under the Ninth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

J.     Under the Tenth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

K.     Under the Eleventh Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

~~F~~L.     For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than TEN MILLION DOLLARS ($10,000,000.00); and

~~G~~M.     Such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        ~~June 21, 2022~~December 20, 2022

                     **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
                     *Attorneys for Plaintiff, Regina Pruitte*

By:

                     Charles Horn
                     400 Garden City Plaza, Suite 500
                     Garden City, New York 11530
                     Tel: 516.355.9696
                     chorn@rfriedmanlaw.com